626 S.E.2d 13

**Berrien W. SMITH, Appellant,**

v.

**J. Drayton HASTIE, Jr., and Everett L. Smith, Jr., Defendants,**

**of whom J. Drayton Hastie, Jr. is Respondent.**

**No. 4052.**

Court of Appeals of South Carolina.

Heard Oct. 4, 2005.
Decided Nov. 28, 2005.
Rehearing Denied Feb. 16, 2006.

Thomas A. Pendarvis, of Beaufort, for Appellant.

Richard S. Rosen and Kevin R. Eberle, both of Charleston, for Respondent.

GOOLSBY, J.:

This is a legal malpractice action. Berrien W. Smith appeals the grant of summary judgment to attorney J. Drayton Hastie, Jr., in her action for breach of fiduciary duty, professional negligence, civil conspiracy, fraud, and fraud in the inducement, all arising from Hastie's creation of a family

limited partnership for Smith and her family. We affirm in part, reverse in part, and remand.

## FACTS

In July 1991, Smith and her husband, Everett L. Smith (Everett), began marriage counseling because of unspecified marital difficulties. During August and September 1991, Everett and Hastie, with whom Everett had developed a close professional relationship, formulated plans for the creation of a family limited partnership. Neither Everett nor Hastie informed Smith of these plans. Although the Smiths' marital problems remained unresolved, Everett ended the marital counseling in the spring of 1992.

In November 1992, Smith met briefly with Everett and Hastie on two separate occasions. During these meetings, each of which lasted approximately thirty to forty minutes, Smith was given a brief overview of the partnership. Hastie informed Smith the partnership was a tool by which she and Everett could reduce their estate taxes and protect their assets from creditors. Smith was also led to believe that both she and Everett would have access to the assets in the partnership during their lifetimes.

At no time during the meetings did Hastie advise Smith about the potential loss of her right to claim the assets in the partnership or the income from these assets in the event of a divorce. In fact, Smith specifically asked Hastie on two occasions how she would be affected in case of a divorce and Hastie told her both times she would be just fine.

As a result of these assurances from Hastie and representations made by Everett, Smith executed the documents necessary to form the family limited partnership. The partnership was funded with the Smiths' property. Hastie advised both Smith and Everett to place significant portions of their jointly owned assets into the partnership. At Hastie's direction, Smith also conveyed to the partnership numerous assets in her name alone as well as assets that she held jointly with Everett.

During the spring of 1994, Everett moved out of the marital bedroom and took residence in a guest bedroom in the marital home. On July 30, 1997, Everett initiated an action in the

Charleston County Family Court in which he requested to live separate and apart from Smith. Smith initially did not obtain counsel in this action because of assertions and representations from Everett that he would be fair and equitable with her. Also, notwithstanding the family court litigation, on August 12, 1997, Smith, following Hastie's advice, executed documents prepared by Hastie that amended the partnership.

In early 1998, during a meeting with Everett and Hastie, Hastie informed Smith that he intended to file a petition to force her to relinquish her shares in the partnership because she and Everett were divorcing. During that meeting, Hastie verbally threatened Smith to the point of tears and then attempted to negotiate a settlement between Smith and Everett. It was only after this meeting that Smith began to suspect that Hastie's advice to enter into and contribute property to the family limited partnership had not been in her best economic interest.

Smith later retained counsel to represent her in the family court action and filed an amended answer, counterclaim, and third-party complaint dated February 5, 1999. Her third-party complaint named as defendants the family limited partnership; Everett, individually and as officer of the family limited partnership; the Broughton Corporation, which was the managing general partner of the family limited partnership; and the Smiths' two children and Everett's daughter by a prior marriage, each of whom had an interest in the family limited partnership. Smith alleged among other things: (1) the family limited partnership and the Broughton Corporation and their respective holdings and assets were subject to equitable apportionment; and (2) the family limited partnership and its managing general partner "were formed and structured in a deliberate effort by Everett ... with the aid and assistance of his business and personal attorney ... to fraudulently and wrongfully deprive [her] of her rightful claim to marital assets ... and to give Everett ... an unfair advantage"; and (3) she was misled about the consequences of her agreement to convey assets to the family limited partnership, particularly in the event of a divorce.

On March 10, 1999, however, Smith and Everett, both of whom were represented by counsel, executed a marital settle-

ment agreement in conjunction with the pending family court litigation. In the agreement, Smith agreed to relinquish her interest in the family limited partnership and in the Broughton Corporation based on certain specific representations from Everett, including an assurance that her shares would be gifted to their three children. The family court approved the settlement in a "Final Decree of Separate Maintenance and Final Order Approving Agreement," which was filed the same day.

On August 11, 2000, Smith filed and served the complaint in the present action, naming both Everett and Hastie as defendants.[1] In her complaint, Smith asserted claims against Hastie for breach of fiduciary duty, professional negligence, civil conspiracy, and fraud.

On July 13, 2001, Smith's affidavit was filed with the trial court and served on Hastie's attorney. In August 2001, Hastie moved for summary judgment.

The trial court heard the motion on May 3, 2002. By order dated May 27, 2002, and filed May 28, 2002, the trial court granted summary judgment to Hastie and dismissed all Smith's claims with prejudice. In dismissing the action, the trial court held as a matter of law: (1) Smith failed to commence her lawsuit within the applicable limitations period; (2) Smith's malpractice claims failed for lack of evidence; and (3) Smith's claims were barred by the doctrine of collateral estoppel. After the denial of her post-trial motions, Smith filed this appeal.

## LAW/ANALYSIS

### A. Civil Conspiracy, Fraud, and Fraud in the Inducement

] As to Smith's causes of action for civil conspiracy, fraud and fraud in the inducement, we affirm the trial court's holding that these claims fail as a matter of law.

] "A civil conspiracy is a combination of two or more persons joining for the purpose of injuring the plaintiff and

---

1. Everett was dismissed from the lawsuit before the issuance of the order now on appeal. Smith does not appeal this adjudication.

causing special damage to the plaintiff."[2]  To recover on a claim for fraud in the inducement, the plaintiff must show the defendant made a false representation relating to a present or preexisting fact, the defendant intended to deceive the plaintiff, and the plaintiff had a right to rely on the false representation.[3]  Similarly, the intent to deceive is an essential element of an action for fraud.[4]

We agree with the trial court that Smith failed to present evidence showing that Hastie was aware that she and Everett were experiencing marital problems when he set up the family limited partnership.  Absent such evidence, there would be no reason for Hastie to mislead her or otherwise knowingly fail to act in her best interest.

In her brief, Smith argues that her affidavit contradicts Hastie's claims that until at least 1997 he was unaware of any marital problems between her and Everett.  She also contends that the longstanding close relationship between Everett and Hastie is evidence of this assertion.  To support her position, Smith stated the following in her affidavit: (1) she believed Hastie knew that she and Everett were having marital problems earlier than Hastie acknowledged; and (2) after the divorce settlement, Everett told her he and Hastie had planned to intimidate her.  We agree with Hastie that these statements do not create an issue of fact for the purpose of defeating summary judgment.  The first assertion was not based on Smith's personal knowledge, and the second contained hearsay.[5]

---

2.  *LaMotte v. Punch Line of Columbia, Inc.*, 296 S.C. 66, 69, 370 S.E.2d 711, 713 (1988).

3.  *Darby v. Waterboggan of Myrtle Beach, Inc.*, 288 S.C. 579, 584, 344 S.E.2d 153, 155 (Ct.App.1986).

4.  *Lancaster v. Smithco, Inc.*, 238 S.C. 15, 17, 119 S.E.2d 145, 145 (1961).

5.  *See* Rule 56(e), SCRCP (stating "[s]upporting and opposing affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence"); *Russell v. Wachovia Bank*, 353 S.C. 208, 220, 578 S.E.2d 329, 335 (2003) (stating a nonmoving party must do more than show a metaphysical doubt about the material facts and must set forth specific facts showing a genuine issue for trial).

Because we affirm the grant of summary judgment as to Smith's fraud and conspiracy claims on the ground that these causes of action failed for lack of sufficient evidence, we need not address whether they are also barred by the statute of limitations or collateral estoppel.[6]

## B. Negligence and Breach of Fiduciary Duty

We disagree, however, with the grant of summary judgment on Smith's claims for negligence and breach of fiduciary duty.

"One standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation."[7] "In South Carolina, attorneys are required to render services with the degree of skill, care, knowledge, and judgment usually possessed and exercised by members of the profession."[8] "To prevail in a legal malpractice claim, the plaintiff must satisfy the following four elements: (1) the existence of an attorney-client relationship; (2) breach of duty by the attorney; (3) damage to the client; and (4) proximate causation of [the] client's damage by the breach."[9]

Smith alleged Hastie was liable for negligence and breach of fiduciary duty in the following particulars: (1) improperly undertaking joint representation of her and Everett; (2) failing to inform her of any potential conflict; (3) failing to recommend that she seek independent counsel; (4) failing to advise her about the consequences of the transfer of assets to the partnership in the event of a divorce between her and Everett; (5) improperly attempting to force her to relinquish her shares in the partnership; (6) improperly attempting to

---

6. *See Weeks v. McMillan,* 291 S.C. 287, 292, 353 S.E.2d 289, 292 (Ct.App.1987) ("Where a decision is based on alternative grounds, either of which independent of the other is sufficient to support it, the decision will not be reversed even if one of the grounds is erroneous.").

7. *Moore v. Moore,* 360 S.C. 241, 253, 599 S.E.2d 467, 473 (Ct.App. 2004).

8. *Holy Loch Distributors, Inc. v. Hitchcock,* 340 S.C. 20, 26, 531 S.E.2d 282, 285 (2000).

9. *Id.*

negotiate a settlement of the domestic dispute between her and Everett; and (7) acting solely on Everett's behalf.

At the hearing on the summary judgment motion, Smith presented an affidavit from attorney H. Dewain Herring, a certified specialist in estate planning, probate, and trust law.[10] In the affidavit, Herring stated that, even if Hastie had no initial knowledge of marital problems between Smith and her husband, he should have advised her of the ramifications of the family limited partnership in the event of a divorce and should have advised her to seek at least a second opinion because he had represented her husband substantially in the past. In conjunction with this opinion, Herring also stated that Hastie "should have probed further into existing conflicts between the spouses" and suggested that this could have been done by an engagement letter asking the clients to identify any conflicts that exist at the outset of joint representation. Herring was emphatic that the present case called for such a letter, noting this precaution was advisable in cases in which one spouse has most of the financial wealth, tends to be the dominant person in the planning process, or is the client of longer standing with the lawyer.

Herring further stated the following: (1) devices such as family limited partnerships could be used to "freeze out" unit holders and devalue assets because of the lack of marketability and closely held nature of the unit; and (2) there was no written documentation showing that Smith was informed of

---

**10.** Hastie objected to the affidavit on the basis that it was untimely. In the appealed order, the trial court, although noting it had the discretion to reject the affidavit under *Jernigan v. King,* 312 S.C. 331, 334 n. 1, 440 S.E.2d 379, 381 n. 1 (Ct.App.1993), nevertheless considered Herring's statements. Given the recognition that the trial court has the discretion to reject an untimely affidavit in a summary judgment motion, it follows that acceptance of a late affidavit would also be within its discretion. Although Hastie argues in his brief that parties should not be permitted to "blindside the court and opposing counsel with late affidavits," he does not argue that the affidavit at issue prejudiced him. We further note that Hastie submitted affidavits from two lawyers attesting to the propriety of his services to the Smith family. *See Learch v. Bartell,* 122 A.D.2d 596, 504 N.Y.S.2d 918, 920 (1986) (finding no abuse of discretion in the consideration of untimely affidavits and exhibits in a summary judgment motion when there was no showing of prejudice to the opposing party), *cited in Black v. Lexington Sch. Dist. No. 2,* 327 S.C. 55, 60, 488 S.E.2d 327, 329 (1997).

this possibility. In addition, Herring opined that, based on his review of the case, Smith's participation in the family limited partnership caused her to lose control over the assets placed in the partnership while her estranged husband, because of his control of the Broughton Corporation, seized control over these assets.

Herring's affidavit squarely calls into dispute the trial court's reasoning that, because Hastie was unaware of any marital dispute between the Smiths, there was no problem with his undertaking to represent both of them in the family limited partnership. To the contrary, Herring's opinion was that, even if the Smiths' marriage appeared harmonious, Hastie should have at least made inquiries to ascertain that they had no existing conflicts and kept both clients adequately informed. Moreover, it appears from Herring's affidavit that the possibility of a freeze out in the event of a divorce was a recognized risk of a family limited partnership that Hastie should have, in response to Smith's inquiries, disclosed to her. We therefore hold Smith presented adequate evidence on the merits of her claims for negligence and breach of fiduciary duty.

We further disagree with the trial court's finding that Smith had knowledge of an injury when she relinquished her assets to the partnership in 1992. The injury to which Herring refers in his affidavit, namely, the "freezing out" of a unit holder, did not occur until 1998, when Hastie advised Smith of his intent to file a petition to force her to relinquish her shares in the partnership. Until then, based on assurances from Hastie and Everett, Smith had understood that she would have access to the partnership assets during her lifetime regardless of how they were titled.[11] Because Smith filed her action against Hastie in 2000, we hold her action was timely filed.

█ Finally, we hold the trial court incorrectly determined that Smith's claims for negligence and breach of fiduciary duty were barred by collateral estoppel.

---

11. *See True v. Monteith,* 327 S.C. 116, 120, 489 S.E.2d 615, 617 (1997) ("[A]bsent other facts, the client should be able to rely on the attorney's advice and should be able to follow this advice without fear the attorney is not acting in the client's best interest.").

*Irby v. Richardson,*[12] an attorney malpractice case cited by the trial court in support of the grant of summary judgment, is distinguishable from the present case. In *Irby,* the issues that the plaintiff was deemed collaterally estopped to relitigate were the validity of his consent to his former wife's having custody of their children and his former wife's fitness as a custodial parent.[13] After approval of the custody agreement but before he sued his attorney for malpractice, Irby had brought several proceedings in the family court during which he actually litigated the issues that he attempted to raise in the malpractice action.[14] In contrast, the precise issues of whether Hastie was negligent or breached a fiduciary duty in advising Smith regarding the family limited partnership have never been actually litigated in any judicial forum until the present lawsuit.[15]

Furthermore, contrary to the statement in the appealed order that "the malpractice claims rest on alleged facts which would be indicia of fraud supporting Plaintiff's case to reclaim her gifts to her children," Herring's affidavit supports a finding that, even in the absence of any unethical conduct, Hastie failed to fulfill his fiduciary responsibilities to Smith. Agency principles would ordinarily have prevented Smith from

12. 278 S.C. 484, 298 S.E.2d 452 (1982).

13. *Id.* at 486, 298 S.E.2d at 453–54.

14. *Id.* at 485–86, 298 S.E.2d at 453. *See also Beall v. Doe,* 281 S.C. 363, 371, 315 S.E.2d 186, 191 (Ct.App.1984) ("[T]o assert collateral estoppel successfully, the party seeking issue preclusion . . . must show the issue was actually litigated and directly determined in the prior action and that the matter or fact directly in issue was necessary to support the first judgment."); Restatement (Second) of Judgments § 29 cmt. a (1982) ("[P]reclusion may be imposed only if . . . the issue was the same as that involved in the present action and was actually litigated and essential to a prior judgment that is valid and final.").

15. *See* Restatement (Second) of Judgments § 27 cmt. e (1982) ("In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. . . . The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention."); 46 Am.Jur.2d *Judgments* § 539, at 811 (1994) (citing the question of whether the precise issue was actually litigated and decided by the factfinder in the first action as a criterion for determining whether collateral estoppel is appropriate under the identity of issue test).

raising during the family court proceedings the issues of Hastie's exercise of due care, leaving her the sole recourse of a lawsuit for legal malpractice.[16]

## CONCLUSION

We affirm the grant of summary judgment on Smith's causes of action for civil conspiracy and fraud. We reverse the dismissal of Smith's causes of action for negligence and breach of fiduciary duty and remand these claims for a trial on the merits.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

BEATTY and SHORT, JJ., concur.

---

16. *See Crowley v. Harvey & Battey*, 327 S.C. 68, 70–71, 488 S.E.2d 334, 335 (1997) (stating that "where a client alleges his former attorney was negligent in advising him to accept a settlement, that alleged negligence is not a ground for attacking the settlement itself but rather is a matter left for a malpractice suit between the client and his attorney" and further holding that the client's acceptance of the settlement and attempt to enforce its terms do not bar a malpractice claim); *cf. Brown v. Butler*, 347 S.C. 259, 265, 554 S.E.2d 431, 435 (Ct.App.2001) (acknowledging the rule that clients are bound by their attorneys' acts and omissions "is not a hard and fast rule").